FONTAINE, RESPONDENT, *v.* LYNG, EXECUTRIX, ET AL.,
APPELLANTS.

(No. 4,532.)

(Submitted November 4, 1921. Decided December 19, 1921.)

[202 Pac. 1112.]

*Real Property—Vendor and Purchaser—Contracts—Fraud—*
*Rescission—Waiver—Forfeitures—Equity.*

Real Property—Contract of Sale—Material Misrepresentation—Rescission.
1. A misrepresentation made by the owner of a ranch to its purchaser that a barn, and a spring in close proximity thereto, inclosed with a fence were a part of the property sold, was material, and sufficient ground for rescission.

Same—Rescission—When Right not Waived.
2. Where the purchaser of ranch property waited nearly a year for the vendor to make good his promise that he would buy the land upon which a barn and spring were located and which he had falsely represented as being included in the property sold, the former's acts in asking for an extension of time for payment of an installment of the purchase price due and cropping the land in the meantime did not constitute a waiver of his right to rescind.

Same—Rescission—When Waived.
3. By continuing in possession of ranch property for more than five months after commencement of suit to rescind, the vendee waived his right of rescission under section 5065, Revised Codes, making it incumbent upon a party desiring to rescind to tender back possession and to keep the tender good by removal from the premises.

Same—Breach of Contract—Forfeiture of Part Payments—When Relief Proper.
4. Notwithstanding the provision in a contract of sale of ranch land that on default of deferred payments all prior payments should be deemed forfeited as rental, the party in default may obtain relief from forfeiture if not guilty of grossly negligent, willful or fraudulent breach of duty, on presentation of such grounds therefor as appeal to the conscience of a court of equity.

Same—Relief from Forfeiture of Part Payments—When Proper.
5. *Held,* under the above rule (paragraph 4), that where a purchaser of ranch lands had paid $10,000 of the purchase price when he sought to rescind under circumstances showing waiver of his right to rescind, and defendants in their counterclaim asked for cancellation of the contract on account of its breach, and forfeiture of the amount paid, he was entitled to be relieved of forfeiture of the amount paid over and above full compensation for the use of the property, if not guilty of gross negligence or willful or fraudulent breach of duty.

*Appeal from District Court, Chouteau County; John W.*
*Tattan, Judge.*

[61 Mont. 590.]

ACTION by C. H. Fontaine against Jennie Lyng, as executrix of the last will and testament and estate of Halvor O. Lyng, deceased, and others.' Decree for plaintiff, and defendants appeal. Reversed and remanded.

*Mr. I. W. Church* and *Mr. Fletcher Maddox,* for Appellants, submitted a brief; *Mr. Maddox* argued the cause orally.

The alleged misrepresentations in respect to the location of the barn and its proximity to water are not made the basis of any claim for damages. It is not shown that the plaintiff was damaged or injured either in money, or his position altered to his prejudice by any misrepresentations; hence he cannot rescind because of them. He was not disturbed in his possession. The notices to remove the barn were entirely a matter for the defendants to deal with. The barn question would hardly seem debatable, since the mere anticipated inability to convey the strip on which the barn stood would not be ground for rescission. (6 R. C. L., p. 929; *Maloney* v. *Houston* (Cal. App.), 197 Pac. 661; *Armstrong* v. *Sacramento Valley Realty* (Cal. App.), 198 Pac. 217.)

Plaintiff lost his right to rescind by laches and through waiver by acquiescence. Assuming for the purpose of this argument that plaintiff was entitled to rescind, we contend that he lost that right by laches in offering to restore. Plaintiff was not entitled to maintain this action in equity until he had first restored or offered to restore the property. He did not offer to restore until after amending his complaint to make the offer. There was no offer to restore at the time of filing the complaint. He did not actually restore until many months after. (6 R. C. L., sec. 321, p. 940; *Como Orchard Land Co.* v. *Markham,* 54 Mont. 438, 171 Pac. 274; *Suburban Homes Co.* v. *North,* 50 Mont. 108, 114, Ann. Cas. 1917C, 81, 145 Pac. 2; *Putney* v. *Schmidt,* 16 N. M. 400, 120 Pac. 720.)

Again, plaintiff has lost his right to rescind by laches in making any claim of fraud. Plaintiff himself admits that he discovered the fraud in May, 1917, but the jury found that

he first had knowledge of the fraud in December, 1916. Thus he delayed eleven months in making any claim of fraud. In the meantime he worked the ranch and appropriated the crops to his own use, realizing about four thousand dollars. This alone defeats rescission. (*Ott* v. *Pace,* 43 Mont. 82, 115 Pac. 37; *Turk* v. *Rudman,* 42 Mont. 1, 111 Pac. 739.) Plaintiff lost his right to rescind by waiver through acquiescence. One who has notice of having been defrauded is bound to ascertain the full extent of the fraud. Notice is brought home to him that a man who has been false in one thing may have been false in all, and it becomes incumbent on him to make a full investigation. (*Ruhl* v. *Mott,* 120 Cal. 668, 53 Pac. 304; *Evans* v. *Duke,* 140 Cal. 22, 73 Pac. 732; *Bancroft* v. *Woodward,* 183 Cal. 99, 190 Pac. 445.) A vendee continuing in use of the property after knowledge of the fraud or being put upon notice waives the right to rescind. (*James* v. *Ward,* 96 Or. 667, 190 Pac. 1105; 3 Elliott on Contracts, sec. 2430; *Ott* v. *Pace,* 43 Mont. 82, 115 Pac. 37; *Pryor* v. *Foster,* 130 N. Y. 171, 29 N. E. 123; *Strong* v. *Strong,* 102 N. Y. 69, 5 N. E. 799; *Kingman & Co.* v. *Stoddard,* 85 Fed. 740, 29 C. C. A. 413; *Temple Nat. Bank* v. *Warner* (Tex.), 31 S. W. 239; *Thiemann* v. *Heinze,* 120 Mo. 630, 25 S. W. 533.) Again, plaintiff entered into a new agreement in respect to the barn after having been notified that its location was in dispute, and further, in August, asked for an extension of the payment to become due in November. Either of these acts defeats his right to rescind. (6 R. C. L., p. 932; *Burne* v. *Lee,* 156 Cal. 221, 104 Pac. 438; *Schmidt* v. *Mesmer,* 116 Cal. 267, 48 Pac. 54; *Tarkington* v. *Purvis,* 128 Ind. 182, 9 L. R. A. 607, 25 N. E. 879.) Asking for an extension of the principal due November 2 was a distinct act of waiver. The effect of a request for an extension without repudiating the sale is equivalent to making a payment after knowledge of the fraud. (*Parsons* v. *McKinley,* 56 Minn. 464, 57 N. W. 1134; *Dennis* v. *Jones,* 44 N. J. Eq. 513, 6 Am. St. Rep. 899, 14 Atl. 913; *Howle* v. *North Birming-*

*ham Land Co.,* 95 Ala. 389, 11 South. 15; *Bell* v. *Keepers,* 39 Kan. 105, 17 Pac. 785.)

It may be generally stated that any act done by the complaining party after discovering the fraud toward carrying out the contract constitutes an irrevocable election to abide by the contract. (6 R. C. L., sec. 317, p. 933; 3 Elliott on Contracts, sec. 2430; *Loan Trust Co.* v. *McIntosh,* 68 Kan. 452, 1 Ann. Cas. 906, 75 Pac. 498; *Arnold* v. *Hagerman,* 45 N. J. Eq. 186, 14 Am. St. Rep. 712, 17 Atl. 93.)

The defendants were entitled to a decree canceling the contract and forfeiting the payments as rental. Time was of the essence of the contract. The plaintiff had defaulted in his November payment. Defendants were entitled to declare the payments forfeited and demand a surrender of the premises. Under the decree as rendered the plaintiff recovers his initial payments of $10,000 wtih interest; damages in the sum of $915.90 and receipts from the ranch approximating $4,000. He pays nothing for the use of the ranch for practically eighteen months. The manifest injustice of such a decree requires no further comment.

*Mr. W. S. Towner* and *Messrs. Norris, Hurd & Rhoades,* for Respondent, submitted a brief; *Mr. Edwin L. Norris* argued the cause orally.

MR. JUSTICE REYNOLDS delivered the opinion of the court.

Upon the second day of November, 1916, the plaintiff entered into a contract with Halvor O. Lyng and Jennie Lyng, his wife, for the purchase of certain real estate. About a year afterward, plaintiff commenced this action against Jennie Lyng, as executrix of the last will and testament of Halvor O. Lyng, deceased; Hilman Lyng, Clara Lyng, and Jennie M. Kitt, devisees under the will, claiming a rescission of the contract on the ground of misrepresentations. Defendants with their answers filed a counterclaim claiming a cancellation of the contract be-

cause of the failure of plaintiff to make payments in accordance with the terms thereof. The case was tried before the court sitting with a jury. Findings of fact were made by the jury substantially sustaining plaintiff's contentions, which were adopted by the court with additional findings. The court made conclusions of law and entered decree in favor of plaintiff in accordance therewith. Defendants have appealed from the decree.

In the latter part of October, 1916, plaintiff and his wife came [1] from the state of Washington, looking for an investment in land. Hilman Lyng, son of Halvor O. Lyng, now deceased, as his father's agent undertook to sell to plaintiff his father's ranch consisting of approximately 2,360 acres of land, and showed him the premises. In addition to certain other alleged misrepresentations which are not necessary to be considered, Hilman Lyng pointed out the barn and a spring of water in close proximity to it, inclosed with the Lyng land within a certain fence, and represented that the fence was the south boundary line of the ranch; however, the barn and the spring were not within the boundary line of the Lyng ranch but south of it, the barn being from thirty to forty feet south of the south line of the ranch and the fence about 100 feet south of the line. This was a matter of considerable importance to plaintiff in his handling of livestock as he contemplated. Plaintiff took possession November 17, 1916, having paid $10,000 upon the purchase price, $2,000 of which was paid on the execution of the contract and $8,000 on the date of taking possession. In December following, a verbal notice was given to plaintiff by one Sample claiming that the barn was upon his premises, and directing plaintiff to remove it therefrom, which was the first intimation that plaintiff had that the barn and spring were not within the boundaries of the ranch. Plaintiff immediately took up the matter with Hilman Lyng, who assured plaintiff that it would be all right; that there was an agreement between his father whereby his father was to purchase the land inclosed with the fence belonging to Sample or would move the barn

on to the Lyng land. Plaintiff said nothing, neither expressing satisfaction with nor dissent from the proposition and did nothing further about it at that time. About April, 1917, Sample served a written notice on plaintiff again demanding the removal of the barn. The matter was again taken up by plaintiff with Hilman Lyng, who gave him the same assurances as before. So far as appears from the record, nothing further was done in adjusting the matter with Sample. Plaintiff cropped the place for 1917, and in September, 1917, he went to the executrix and asked for an extension of time upon the payment due November 2 of that year, which extension was not granted. On the 20th of October, 1917, plaintiff presented to the executrix his claim for rescission and damages, which claim was disallowed. On the 1st of November, 1917, this action was commenced. On December 18, 1917, Hilman Lyng served upon plaintiff written notice canceling the contract because of the failure of plaintiff to make the payment due November 2 preceding, and demanding possession of the ranch. Plaintiff, however, remained in possession of the ranch until about the middle of April, 1918.

The first question to be determined upon this appeal is whether or not plaintiff is entitled to a decree rescinding the contract. The evidence of the plaintiff's witnesses was clear and unequivocal that Hilman Lyng misrepresented the south boundary of the ranch so as to include the barn and spring, and the findings of the jury and of the court were in accordance therewith. This feature of the case being determined by the jury and the court in favor of plaintiff upon sufficient evidence, and the representation being material, it must be held that such misrepresentation was sufficient ground for rescission. (*Post* v. *Liberty*, 45 Mont. 1, 121 Pac. 475.)

The court expressly found that plaintiff "trusted to Hilman [2] Lyng and associate owners of the Lyng ranch to take such action as was necessary to include said barn and water within the boundaries of the said Halvor O. Lyng home ranch," and the finding was unquestionably supported by the evidence.

Plaintiff had the right to rely upon the assurances of Hilman Lyng and, in doing so, was justified in giving to Hilman Lyng a reasonable time within which to fulfill his assurances. While resting upon these promises, plaintiff had the right to continue with his contract, and therefore, whatever he did in the way of cropping the land, of seeking an extension of time for payment of the installment due November 2, 1917, would not be any waiver of his right to rescind on the ground of the misrepresentations as to the barn and water if such assurances should not be fulfilled. On the contrary, plaintiff was not under obligation to wait indefinitely for this matter to be adjusted, and when, after nearly a year's time, nothing had been done to make good the defect in the title, plaintiff had the right to declare the rescission of the contract.

Plaintiff, however, after filing his claim with the executrix, [3] and after commencement of suit, failed to stand upon his right of rescission, but waived such right by remaining in possession of the premises for a period of over five months thereafter and until about the middle of April, 1918. Under the statute, in order to rescind the contract, the one seeking to rescind must return to the other party, with reasonable diligence, all that he has received under the contract, or offer so to do. (Rev. Codes, sec. 5065.) In this case all that plaintiff received under the contract was the possession of the premises. Therefore it devolved upon him, upon rescinding the contract, to forthwith tender back the possession and keep the tender good. He could keep the tender good only by removal from the premises so that there would be nothing whatever in the way of the vendor resuming possession. (*Smith* v. *Christe,* 60 Mont. 604, 201 Pac. 1011.) In this case, plaintiff not only failed to surrender the premises upon the commencement of the suit, but he remained in the possession of the premises for months after defendants had demanded possession from him. Under these circumstances we cannot escape the conclusion that plaintiff waived his right of rescission.

On the 18th of December, 1917, defendants served notice [4-5] upon plaintiff of cancellation of the contract by reason of the nonpayment of the installment of principal and interest which became due November 2, 1917, as hereinbefore stated. Defendants now insist, as set forth in their counterclaim, that the contract has been canceled, and, the contract having been recorded, they pray for a decree determining that the contract is canceled and removing the cloud from the title, and also that the payments made upon the contract shall be declared forfeited. The contract provides that upon default the escrow deed shall be returned to vendor, "and that all payments theretofore made by said party of the second part shall be considered as rental for said lands and premises and shall be forfeited by said party of the second part to said party of the first part."

The reply of plaintiff admits the failure to make the payments, but alleges that such payments were not made for the sole reason that Hilman Lyng had made the misrepresentations hereinbefore referred to, and alleges that if the representations had been true, the plaintiff would have paid on November 2, 1917, the amount due on the contract at that time, and that by reason of the foregoing facts it would not be just or equitable to permit the defendant to retain the payments that were made. Under the facts in the case, defendants were entitled to cancel the contract because payment was not made in accordance with its terms, and, being entitled to cancellation of the contract, they are therefore entitled to a decree determining that the contract is canceled and removing the cloud from their title. If there had been no prayer for forfeiture of the payments, the decree canceling the contract and removing the cloud from the title could be entered and the case would then be disposed of; but defendants having prayed for a decree declaring a forfeiture of the payments, it now becomes necessary for us to determine whether or not they are entitled to retain the whole of such payments.

It is provided by the statute that "Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful or fraudulent breach of duty." (Rev. Codes, sec. 6039.) While the contract provides that the moneys so paid on the contract shall be forfeited and held as rental, yet it is clear upon the face of the contract that the $10,000 paid would be considerably in excess of any reasonable rental value of the premises for the time that they were occupied by plaintiff. While the retention of the moneys is based upon the theory of rental, yet it is clear that the relation of landlord and tenant did not exist, nor was it within the contemplation of the parties that such relation should continue after the default, because no such terms were stated. The occupancy of the premises by plaintiff was by virtue of the contract and as purchaser thereunder and not as a tenant. Under these circumstances, the clause of the contract providing that the vendor should retain the moneys paid as rental involved a loss to plaintiff in the nature of a forfeiture by reason of his failure to comply with the provisions of the contract. Under the statute, plaintiff is entitled to be relieved from this forfeiture upon making compensation to the defendants unless he was guilty of grossly negligent, willful or fraudulent breach of duty. In order for plaintiff to be entitled to this relief, he must present such grounds therefor as will appeal to the conscience of a court of equity. (*Fratt* v. *Daniels-Jones Co.*, 47 Mont. 487, 133 Pac. 700; *Cook-Reynolds Co.* v. *Chipman*, 47 Mont. 289, 133 Pac. 694; *Clifton* v. *Willson*, 47 Mont. 305, 132 Pac. 424; *Suburban Homes Co.* v. *North*, 50 Mont. 108, Ann. Cas. 1917C, 81, 145 Pac. 2.)

It seems to us that the facts in this case come within this rule. Plaintiff was entitled to rescind by reason of the false representations as to the boundaries of the ranch as hereinbefore pointed out, and in October, 1917, filed claim with the

executrix of the estate of Halvor O. Lyng, deceased, in effect claiming such rescission, and thereafter commenced action in the court to secure a decree for rescission. While plaintiff later waived his right of rescission by retaining the possession of the premises and exercising acts of proprietorship over them, nevertheless he was insisting upon rescission. While in this position, it could not be expected that he would continue to make payments on the contract, thus destroying the effect of his rescission. Under these circumstances, it cannot be said that his failure to perform the contract in not making the payment due November 2, 1917, was due to gross negligence or willful or fraudulent breach of duty. If, then, the actual damages sustained by defendants are less in amount than the moneys paid by the plaintiff upon his contract, plaintiff is entitled to reimbursement to the extent of the excess payments. (*Cook-Reynolds Co.* v. *Chipman, supra.*) Inasmuch as the evidence fails to show the value of the use and occupation of the premises by plaintiff for the time that he was in possession thereof, which, in the absence of any showing to the contrary, we assume constitutes the defendants' damage, it becomes necessary that the case be remanded for further proceedings to determine the credit to which defendants are entitled in the adjustment of the equities between the parties.

For the reasons herein given, it is ordered that the judgment be reversed and the cause remanded to the district court, with directions to determine what allowance should be made to defendants for the use of the property in question for the time that the premises were occupied by plaintiff, and that thereupon judgment be entered canceling the contract, removing the cloud of the contract from the title, awarding possession of the property to defendants, and providing that plaintiff do have and recover from defendants the sum of $2,000 with legal interest thereon from and after November 2, 1916, and for the sum of $8,000, with legal interest thereon from and after November 17, 1916, less the value of the use and occupation of the premises, to be ascertained as above mentioned, with inter-

est thereon at the legal rate from and after the date of plaintiff's removal therefrom.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN concur in the result.