## BOZDECH et al., Respondents, *v.* MONTANA RANCHES CO., Appellant.

### (No. 5,182.)

(Submitted May 2, 1923. Decided May 26, 1923.)

[216 Pac. 319.]

*Vendor and Purchaser—Contracts—Rescission—Defective Title —Encumbrances—Undisclosed Easement — Waiver—Tender of Balance Due—When Unnecessary—Notice.*

Contracts—Rescission—Undisclosed Easement—Defective Title.

1. Where a contract for the sale of ranch property provided for a reservation of title to a right of way for the pole lines of an electric power company, an additional restriction in a recorded easement in favor of the power company providing that no hay-stacks, brush piles, sheds or barns should be placed upon the land within seventy-five feet of the pole lines, of which restriction the purchaser was ignorant, was a sufficient defect in the vendor's title to warrant action for rescission by the purchaser.

Same—Rescission—Waiver—What Does not Constitute.

2. Where a purchaser of land had no knowledge of an encumbrance until a few days before he rejected a proffered deed because of defect of title, the fact that he remained in possession and made payments on the purchase price did not constitute a waiver of his right to rescind.

Same—Purpose of Recording Act.

3. The purpose of the Recording Act is to protect persons who claim rights under a recorded instrument.

Same—Good Title—Recorded Encumbrance—Effect.

4. The mere fact that an encumbrance upon land was of record at the time a sale was made does not except the encumbrance from the agreement to convey good title.

Same—Defective Title—Right in Vendor to Perfect Title—Time.

5. Prior to the time performance is due by the vendor, the purchaser cannot rescind because of defect in title, the vendor having until then to perfect title.

Same—Purchaser of Land Need not Accept Doubtful Title.

6. A purchaser of land is not required to accept a doubtful title or one subject to litigation.

Same—Rescission—Notice—What Constitutes.

7. Formal notice of rescission of a land contract is not always a prerequisite to a right to rescind, it being only necessary to make timely communication of his intention in that regard, and bringing an action promptly is generally sufficient.

---

1. Building restriction as breach of covenant against encumbrancers, see note in Ann. Cas. 1913B, 1066.

Same—Rescission—Notice of Defect in Title not Waiver of Defects not Specially Mentioned.

8. *Held*, that by giving notice to the vendor that the abstract of title furnished by him showed that he did not have a marketable title, the purchaser did not waive every defect not specifically mentioned in the notice.

Same—Rescission—Tender of Balance Due—When not Required.

9. When a vendor at the time conveyance is due is unable to give a good title as stipulated for in his contract, the purchaser is not required to make a tender of the balance of the purchase price due as a prerequisite to his right to rescind.

Same—Rescission—When Vendor not Entitled to Time to Correct Title.

10. Where the purchaser elected to rescind the day after a defective deed was tendered him, the vendor was not entitled to further time to correct the title or execute a proper conveyance.

Same—Rescission Asked on Several Grounds—Plaintiff Entitled to Judgment if Able to Sustain One Ground.

11. Where a party seeks to rescind a contract upon several grounds, it is sufficient if he be sustained in one.

*Appeal from District Court, Lewis and Clark County; W. H. Poorman, Judge.*

ACTION by George Bozdech and another against the Montana Ranches Company. Judgment for plaintiffs and defendant appeals. Affirmed.

*Mr. R. Lee Word* and *Messrs. Day & Mapes,* for Appellant, submitted a brief, and one in reply to that of Respondents; *Mr. E. C. Day* argued the cause orally.

The contract by its terms excepted from the conveyance the easement for the maintenance of the poles upon the lands according to the terms of the recorded grant. The existence upon the ground of this open, notorious and public nonremovable servitude is not an "encumbrance" within the meaning of section 6875 of the Revised Codes of 1921. (*Ferguson v. Edgar*, 178 Cal. 17, 171 Pac. 1061; *Sisk v. Caswell*, 14 Cal. App. 377, 112 Pac. 185; *Schurger v. Morgan*, 20 Idaho, 97, Ann. Cas. 1912D, 1114, 36 L. R. A. (n. s.) 313, 117 Pac. 122; *Ireton v. Thomas*, 84 Kan. 70, 32 L. R. A. (n. s.) 737, 113 Pac. 306.) The same principles were followed in the case of the *Pioneer Mining Co.* v. *Bannack Co.*, 60 Mont. 254, 198

Pac. 748, in which the opinion of the court was written by the judge who tried the present case.

The evidence is undisputed that the plaintiffs took possession of the lands at the time of the execution of the contract in December, 1915. At that time the pole line was known by them to be upon the premises. Yet they remained in possession of the lands by their tenant, cultivating or trying to cultivate the same and receiving the income, and paid all of the installments without objection until December, 1920. The court will take judicial notice of the facts that between the date of the contract in 1915 and December, 1920, there had been great changes in conditions and the decline in prices of land incident to the prosecution of the great war, the unsettled condition following the armistice and the delay in the making and ratification of the Treaty of Peace, and the general period of business depression and low prices of lands and farm products since that event. Under these circumstances it would be inequitable to permit the plaintiffs to rescind the contract and sue for the return of the purchase money. It was error for a court of equity to hold that the plaintiffs had not waived their right to rescind, if it ever existed. (*Ott* v. *Pace*, 43 Mont. 82, 115 Pac. 37; *Hills* v. *Johnson*, 52 Mont. 65, 156 Pac. 122; *Smith* v. *Christie*, 60 Mont. 604, 201 Pac. 1011; *Fontaine* v. *Lyng*, 61 Mont. 590, 202 Pac. 1112.)

Where the purchaser goes into possession and, after knowledge of the falsity of the vendor's representations that his title was free from encumbrances, retains possession, and exercises acts of ownership, such as leasing the property and collecting the rents, he waives his right to rescind. (*Dennis* v. *Jones*, 44 N. J. Eq. 513, 14 Atl. 913; *Shappiro* v. *Goldberg*, 192 U. S. 323, 48 L. Ed. 419, 24 Sup. Ct. Rep. 259 [see, also, Rose's U. S. Notes]; 48 Co-op. 419; *Cooper* v. *Hillsboro Garden Tracts*, 78 Or. 74, Ann. Cas. 1917E, 840, 152 Pac. 488.) It is immaterial that the plaintiffs did not actually or correctly know the law with reference to their rights at the time they first discovered the facts. Mistakes of law and

mistakes of facts are, as possible bases for rescission of contracts, *in pari materia;* there is not, either as to the duty of discovery or the time of commencing suit, any distinction between them. (*Brundy* v. *Canby,* 50 Mont. 454, 148 Pac. 315.) The case of *Ferguson* v. *Edgar,* 178 Cal. 17, 171 Pac. 1061, is of special interest because it decides a similar question upon the authority of California Civil Code, section 1114, which is identical with our section.

Before a lien like a mortgage is to be held to be a ground for a rescission, it must be shown that the vendor could not complete the title if the purchaser was willing to pay the purchase money. (*Styles* v. *Blume,* 12 Misc. Rep. 421, 33 N. Y. Supp. 620; *Martin* v. *Stone,* 79 Mo. App. 309; *Hawkins* v. *Rodgers,* 91 Or. 483, 179 Pac. 568.)

Before the vendor can be held to be in default the plaintiff must show an unconditional tender of payment and a refusal to execute the deed, or a tender of payment accompanied by a demand with which the vendor is bound to comply, and a refusal or inability on the part of the vendor to comply. (*Bailey* v. *Lay,* 18 Colo. 405, 33 Pac. 407.) Where the purchaser makes specific objections to the tender of a deed he waives all of those which might have been obviated, if made. If the objection made be held untenable the others are to be treated as waived. (39 Cyc. 1549 (VIII); *Wilson* v. *Beazley,* 186 Cal. 437, 199 Pac. 772.)

*Mr. James A. Walsh, Mr. William T. Pigott* and *Mr. Raymond T. Nagle,* for Respondents, submitted a brief; *Mr. Walsh* and *Mr. Pigott* argued the cause orally.

A servitude is an encumbrance. An encumbrance "is an embarrassment of an estate or property so that it cannot be disposed of without being subject to it." (Bouvier's Law Dictionary; *Kelly* v. *Stephens,* 39 Ga. 466; *Newhall* v. *Insurance Co.,* 52 Me. 180.) An agreement for a party-wall, half to be on land contracted to be sold, is an encumbrance on that land, for it creates "a right or interest in a third person in

land to the diminution of its value.'' (*Mackey* v. *Harmon,*
34 Minn. 168, 24 N. W. 702, 704; see, also, *Wetmore* v. *Bruce,*
118 N. Y. 319, 322, 23 N. E. 303.) Any right existing in
another to use the land or whereby the use by the owner is
restricted is an encumbrance within the legal meaning of the
term. Encumbrance imports every right to or interest in or
charge upon land which may subsist in or belong to another,
to the diminution of the value of the land, but consistent with
the power to pass the fee by a conveyance. (*Forster* v. *Scott,*
136 N. Y. 577, 18 L. R. A. 543, 32 N. E. 976.) Anything that
restricts the use and enjoyment of the premises or gives any
other person any rights therein, or thereon, is an encumbrance
within the meaning of the law. (*Howell* v. *North Hampton
Ry. Co.,* 211 Pa. St. 284, 60 Atl. 793; *Graybill* v. *Ruhl,* 225
Pa. St. 417, 74 Atl. 239.) A right to construct and maintain
water-pipes across land is an encumbrance. (*Tandy* v. *Waesch,*
154 Cal. 108, 97 Pac. 69.) Any building restriction as to the
character of building or where it must be placed is an en-
cumbrance. (*Whelan* v. *Rossiter,* 1 Cal. App. 701, 82 Pac.
1082; *Williams* v. *Hewitt,* 57 Wash. 62, 135 Am. St. Rep. 971,
106 Pac. 496; *Wetmore* v. *Bruce,* 118 N. Y. 319, 23 N. E. 303;
*Texas Tel. Co.* v. *Huntington* (Tex. Civ.), 121 S. W. 242;
*Farrington* v. *Tourtelott,* 39 Fed. 738; *Flynn* v. *White Breast
Coal Co.,* 72 Iowa, 738, 32 N. W. 471; *Roberts* v. *Levy,* 3 Abb.
Pr. (n. s.) 311; *Foster* v. *Foster,* 62 N. H. 46.)

The servitude in this instance amounts to more than a lien
upon the land. It goes to the very title to the land and would
restrict the rights of the respondents to the use and occupation
of the land. It gives the Montana Power Company a certain
interest in the land to use and occupy it for certain purposes,
which interests and right are prior and paramount to any title
that the appellant could or can now convey. The right to
use and occupation on the part of the power company is not
restricted as to time or place. The appellant could not and
now cannot convey any title to this land that is not subject
to this prior and paramount right of the power company.

When parties have contracted to purchase and pay for title free and clear of encumbrances, a court of equity will not compel them to accept title thus burdened.

When a person agrees to convey land by a warranty deed, although there may be no other provisions in the contract, he must convey a marketable title. A marketable title is one free from doubt, as disclosed by the records. It is held where a record has been destroyed, as in California by the earthquake, that it is impossible for the vendor to convey a perfect title. (*Reed* v. *Sefton,* 11 Cal. App. 88, 103 Pac. 1095; *Wolenberg* v. *Rose,* 45 Or. 615, 78 Pac. 751; *McNutt* v. *Nellans,* 82 Kan. 424, 108 Pac. 834; *Williams* v. *Bruker,* 83 Kan. 53, 30 L. R. A. (n. s.) 343, 109 Pac. 998; *Lockhart* v. *Ferry,* 59 Or. 179, 115 Pac. 431; *Benson* v. *Shotwell,* 87 Cal. 49, 25 Pac. 249; *Turner* v. *McDonald,* 76 Cal. 177, 9 Am. St. Rep. 189, 18 Pac. 262; *Bank* v. *Kellogg,* 4 S. D. 312, 56 N. W. 1071; *Richmond* v. *Koenig,* 43 Minn. 480, 45 N. W. 1093; *McPherson* v. *Schade,* 149 N. Y. 16, 43 N. E. 527; *Eggers* v. *Busch,* 154 Ill. 604, 39 N. E. 619.)

The appellant, at the time for performance on its part, that is, to convey a good title by warranty deed, according to the terms of the contract, was not able to perform the contract for, among other reasons, that it had not procured, and could not have procured, an extinguishment of the servitude, and it had not and could not release the land from the encumbrance of the mortgage, and it could not convey the water right that it agreed to convey. Under these circumstances, no tender was necessary to put the appellant in default. (*Baum* v. *Northern Pac. Ry. Co.,* 55 Mont. 219, 175 Pac. 872; *Armstrong* v. *Poe,* 35 Mont. 557, 90 Pac. 758; *Mix* v. *Beach,* 46 Ill. 311.)

"The vendee is not required to accept a deed, though in form a warranty, stipulating the land is free from all encumbrances, when there is a cloud upon the title in the shape of an unsatisfied mortgage of record. Though a deed in proper form has been tendered, the vendee, seeking to recover back the price paid for land, may justify his refusal of said

deed by showing an unsatisfied mortgage of record against the land.'' (*Kimball* v. *Bell,* 47 Kan. 757, 28 Pac. 1015; *Durham* v. *Hadley,* 47 Kan. 73, 27 Pac. 105; *Snowden* v. *Derrick,* 14 Cal. App. 309, 111 Pac. 757.)

In *Patterson* v. *Frinhoffer,* 215 Pa. St. 47, 64 Atl. 326, the supreme court of Pennsylvania said: ''When one protects himself against encumbrances by a positive covenant that the property is to be conveyed to him clear of all such encumbrances, he is entitled to the benefit of his contract, whether he had knowledge of such encumbrances or not.'' The rule is clearly stated in 26 Corpus Juris, page 1155, section 70. (See, also, *McGibbons* v. *Wilder,* 78 Iowa, 531, 43 N. W. 520; *Edwards* v. *Clark,* 83 Mich. 246, 47 N. W. 112; *Yancey* v. *Tatlock,* 93 Iowa, 386, 61 N. W. 997; *Clark* v. *Fisher,* 54 Kan. 403, 38 Pac. 493; *Brown* v. *Taylor,* 115 Tenn. 1, 4 L. R. A. (n. s.) 309, and note, 188 S. W. 933; *McCall* v. *Wilkes,* 121 Ga. 722, 49 S. E. 722; *Allen* v. *Taylor,* 121 Ga. 841, 49 S. E. 799; *McGovern* v. *Myers,* 60 Iowa, 256, 14 N. W. 788; *Demars* v. *Koehler,* 62 N. J. L. 203, 41 Atl. 720; *Memmerst* v. *McKeen,* 112 Pa. St. 355, 4 Atl. 542; *Osburn* v. *Pritchard,* 104 Ga. 145, 30 S. E. 656; *Corbett* v. *Wrenn,* 25 Or. 305, 35 Pac. 658; *Watts* v. *Fletcher,* 107 Ind. 391, 8 N. E. 111; *Myers* v. *Munson,* 65 Iowa, 423, 21 N. W. 759; *Huyck* v. *Andrews,* 113 N. Y. 81, 20 N. E. 581).

MR. CHIEF COMMISSIONER FELT prepared the opinion for the court.

On December 4, 1915, the parties to this action entered into a contract in writing for the sale of a certain tract of real estate in Lewis and Clark county, Montana. In consideration of the sum of $12,000 to be paid in the manner provided in said contract the defendant agreed to sell and convey to the plaintiffs by good and sufficient warranty deed the lands and premises therein described, together with an undivided one-fourth interest in a certain ditch right and water right described therein. The contract contained several reservations

of title. One of these is material to this controversy, and is in the following language: "Right of way is hereby reserved * * * for poles of the Montana Power Company now across the northern boundary of said land." Of the purchase price the plaintiffs paid $3,000 upon the execution of the contract, and agreed to pay the balance in five equal payments commencing December 15, 1916, and yearly thereafter until fully paid, all unpaid balances to draw interest at the rate of six per cent per annum, payable annually.

The contract provides that, in the event the defendant cannot convey title to the lands, as therein provided, the plaintiffs agree to accept repayment of all moneys paid by them, with legal rate of interest as liquidated damages. Time of payment and performance is made the strict essence of the agreement.

Each of the annual installments, together with accrued interest, was punctually paid, with the exception of the last. On December 15, 1920, the day when this last installment became due, one of the attorneys for the plaintiffs tendered the exact amount due, being $1,800 principal and $108 interest, at the office of the defendant, where the same was payable. He then demanded a deed in accordance with the contract, but was informed that no deed had been prepared, and that the officers of the defendant having authority to execute a deed were out of the city. The money was deposited with the Union Bank & Trust Company, with instructions to pay it to the defendant upon delivery of the deed, but with the further instruction that delivery of the deed should not be accepted until the same could be examined by the attorney for plaintiffs. On January 6, 1921, the defendant company executed a deed to plaintiffs conveying the lands described in the contract, which deed was tendered to plaintiffs on January 31, 1921. The covenants of warranty, in addition to the reservations provided for in the contract, contained the following: "Also subject to any encumbrance of record, or unpaid taxes subsequent to December 4, 1915; provided, however, that any

and every warranty herein contained applies only to the real property hereby conveyed, and specifically excludes all warranty or warranties as to the water right hereinbefore referred to.''

On February 1, 1921, the plaintiffs, through their attorney, served upon the defendant a notice in writing that they refused to accept the proffered deed, and that they elected to rescind the contract for reasons stated in said notice. On February 4 an amended notice to the same effect was given in the same manner, with the reasons set forth somewhat more in detail. Each notice offered to restore possession of the lands described in the contract, upon condition that the plaintiffs return the purchase price received. The defendant not agreeing to rescission, the plaintiffs thereafter brought this action. The amended complaint, upon which the action was tried, was filed March 28, 1921. The execution of the contract, a copy of which is attached as an exhibit, is pleaded. Full performance on the part of the plaintiffs, including tender of the final payment according to the terms of the contract, is likewise pleaded. It is further alleged that the deed did not convey such title to the lands in question as was stipulated in the contract, in that the same was subject to ''easements, servitudes and encumbrances not provided for in the contract, or excepted from the agreement to convey good title.'' Two such encumbrances and easements are specially pleaded. The first is a mortgage, given by the defendant on the twentieth day of March, 1916, mortgaging the lands described in the contract to the Banking Corporation of Montana, to secure the payment of a certain promissory note in the sum of $2,500, due March 1, 1921, which said mortgage was on the twenty-third day of March, 1916, filed for record in the office of the county clerk and recorder of Lewis and Clark county, and recorded in Volume 30 of Mortgages, on page 343, upon which there is still owing the sum of $2,500 and some interest. The second is an easement granted to the predecessor of the Montana Power Company, which in addition to the right for poles now

across the northern boundary of said land, expressly excepted and provided for in the contract, restricts the plaintiffs in the use of a large portion of the lands further than that necessary for the maintenance and repair of the pole lines, in that it is therein agreed that the owners of said lands and premises should not suffer any haystacks, brush, sheds or barns to be placed within seventy-five feet on either side of any of said pole lines, which together with a strip eighty feet wide occupied by the pole lines, makes a total of approximately fifteen acres.

The plaintiffs aver that they have at all times been ready, able and willing to duly do, keep and perform all things by them to be done, kept and performed under the terms of said contract and agreement, and that they have duly done, kept and duly performed all the conditions on their part, and all things to be by them done, kept and performed under the terms and conditions of said contract, and that the defendant has not done, kept, and performed the things to be by it done, kept and performed under said contract, and particularly in this, that it did not execute and tender a deed, and cannot convey a good title to said lands and premises free from liens, encumbrances and servitudes other than those mentioned in said contract and agreement.

They confirm and renew their offer to rescind said contract and agreement, and to surrender possession of the said lands, and premises, and all right, title, claim and interest therein and thereto, and to account for all profits and benefits received from the occupation of said lands and premises under said contract and agreement, and to do and perform such other things as in equity and good conscience should be done, and may be required by the court. They pray judgment that the contract and agreement be rescinded, and that the defendant refund and pay to plaintiffs the amounts paid, with legal interest from the respective dates of payment; that such sums be declared to be a lien upon the lands and premises, and

that the plaintiffs' note falling due December 15, 1920, be canceled and delivered to plaintiffs.

The defendant's answer does not controvert any of the ultimate facts pleaded in the amended complaint. It does, however, deny the legal effect of the matters pleaded by the plaintiffs. It also pleads some new matter. To the various grounds for rescission relied upon by the plaintiffs several defenses are interposed. In our discussion of the question presented by the appeal, we will mention those which it is now contended are sufficient.

The cause was tried to the court sitting without a jury. No fact testified to by any witness is disputed. The material allegations of the complaint were sustained by the evidence. As in the pleadings, the only controversy is as to the legal effect of the evidence. The court made a general finding in favor of the plaintiffs, decreeing that the contract be rescinded, and entered judgment for the amount of payments made upon the purchase price, with interest, after deducting the rental value for the use of the premises. The appeal is by the defendant from this judgment.

The first two assignments of error relate to easement of [1] the Montana Power Company, which is relied upon by the plaintiffs as one of the grounds of rescission. It is contended by the defendant that, the pole lines being upon the land when the contract was made, the plaintiffs were bound to take notice of all the conditions contained in the recorded easement, and that therefore those conditions were within the exception to the agreement of warranty contained in the contract. In support of their contention counsel cite *Ferguson* v. *Edgar,* 178 Cal. 17, 171 Pac. 1061; *Sisk* v. *Caswell,* 14 Cal. App. 377, 112 Pac. 185; *Schurger* v. *Morgan,* 20 Idaho, 97, Ann. Cas. 1912D, 1114, 36 L. R. A. (n. s.) 313, 117 Pac. 122; *Ireton* v. *Thomas,* 84 Kan. 70, 32 L. R. A. (n. s.) 737, 113 Pac. 306. These cases deal with that class of encumbrance that merely affects the physical condition of the land. They hold that an agreement to convey title free from all encumbrances is not

broken by the existence of some open, visible and notorious easement or servitude such as a public highway, ditch, dam or levee. Many decisions on this question are gathered in the notes in 4 L. R. A. (n. s.) 309, 30 L. R. A. (n. s.) 833, 32 L. R. A. (n. s.) 737, and they are far from being harmonious in support of the result reached in the cases cited by appellant. However, in the case at bar the right for poles of the Montana Power Company was expressly reserved in the contract agreeing to convey the lands free and clear of encumbrances. We are not called upon to decide whether this contract would have been breached by such an encumbrance as merely affects the physical condition of the land in the absence of such a reservation.

Three of the cases cited by appellant directly, and the other one indirectly rely upon *Memmert* v. *McKeen*, 112 Pa. 315, 4 Atl. 542. The opinion in that case contains the following classification of encumbrances: "Encumbrances are of two kinds, *viz.*: (1) Such as affect the title; and (2) those which affect only the physical condition of the property. A mortgage or other lien is a fair illustration of the former; a public road or a right of way, of the latter. Where encumbrances of the former class exist, the covenant referred to, under all the authorities, is broken the instant it is made, and it is of no importance that the grantee had notice of them when he took the title. (*Cathcart* v. *Bowman, supra; Funk* v. *Voneida*, 11 Serg. & R. 109.) Such encumbrances are usually of a temporary character, and capable of removal; the very object of the covenant is to protect the vendee against them; hence knowledge, actual or constructive, of their existence, is no answer to an action for breach of such covenant." The authorities are unanimous in supporting what is therein said concerning encumbrances affecting the title to lands. (See cases cited under section 913 in Devlin on Deeds and in the notes in 4 L. R. A. (n. s.) 309, and 32 L. R. A. (n. s.) 737.) This court has recently expressed approval of that rule in *Adams* v. *Durfee, ante,* p. 315, 215 Pac. 664.

In this case the easement of the Montana Power Company was an encumbrance which both affected the title to and the physical condition of the land. The appellant contends that the reservation of the physical encumbrance drove the plaintiffs to the record to ascertain to what extent the recorded easement encumbered the title further than the express reservation. No authority is cited to sustain that contention.

In *Huyck* v. *Andrews*, 113 N. Y. 81, 10 Am. St. Rep. 432, 3 L. R. A. 789, 20 N. E. 581, the defendant had conveyed land to plaintiff by deed warranting the title free from encumbrances. The land bordered on a stream. A third party owning the lands across the stream had previously erected a mill dam under an easement which gave him the right to extend the dam as high as he wished and to use the entire water of the stream. The defendant was held liable for breach of warranty. In the discussion the opinion states: "While the grantee knew of the existence of the dam and of some use of the water, she did not know of the right to extend the dam from the edge of the water to her high land on the west side of the creek; nor did she know of the right Briggs had to use the entire water of the stream." It was never suggested that she was obliged to consult the recorded easement to determine the extent thereof. She had a right to rely upon the covenants of warranty contained in her deed. *Schurger* v. *Morgan, supra,* cited by the appellant, commenting upon *Huyck* v. *Andrews*, agrees with the result reached in the latter respect, although it does not agree with what is said by the New York court concerning visible physical encumbrances.

The recorded easement of the Montana Power Company, in addition to the pole lines, which were mentioned in the contract now under consideration, restricted the owner's use of the land for seventy-five feet on either side of the line of poles. No haystacks, brush piles, sheds or barns could be placed thereon. This restriction was a sufficient defect in the de-

fendant's title to give the plaintiffs the right to reject it. (27 R. C. L. 508.)

It is next contended by the appellant that the plaintiffs [2–5] waived their right to rescind the contract by remaining in possession and making payments on the purchase price after having knowledge of the encumbrance. There are two reasons why this contention cannot be sustained. In the first place there was no proof that the plaintiffs had any knowledge of the encumbrance further than the visible pole lines, to which no objection is made, until a few days prior to rejecting the defendant's deed. It is true the easement, with its objectionable restrictions, was of record and the plaintiffs had constructive notice of its contents. But the purpose of the Recording Acts is to protect the persons who claim rights under the recorded instruments. (Devlin on Deeds, 759.) It has never been held that an encumbrance was excepted from an agreement to convey good title, merely because the encumbrance was of record at the time the agreement was made. In the second place, the defendant did not agree to convey the title free from the encumbrance in question until December 15, 1920. A vendor is only required to have the title contracted for, at the time performance is due. (*Hogsed* v. *Gillett,* 60 Mont. 467, 199 Pac. 907.) The defendant had until that time to comply with his contract, and the plaintiffs were not entitled to rescind by reason of any defect in the title until that time.

The appellant contends that the mortgage of the Banking Corporation of Montana, though unpaid and of record, is no encumbrance as against the plaintiffs. This contention is based on the fact that the plaintiffs were in possession of the land under the contract, though the contract was not of record, before the mortgage was executed and recorded. It is unnecessary for us to decide whether the mortgage or the contract would have priority under the facts as they appear. [6] The plaintiffs were not required to accept a doubtful title, nor one subject to litigation.

The plaintiffs did not rely upon the existence of the Bank-
[7, 8]  ing Corporation mortgage as a ground of rescission in
the original complaint.  They placed sole reliance upon ob-
jection to the title on account of the restrictions contained in
the easement of the Montana Power Company, and upon fail-
ure to comply with the contract with respect to the water
right.  The same is true as to the original and amended notice
of rescission.  No objection was made to the title on account
of the mortgage until the filing of the amended complaint.
The appellant contends that the plaintiffs thereby waived all
objection to the title, so far as it is affected by the mortgage
in question.  We cannot agree with this contention.  Formal
notice of rescission is not always a requisite to rescinding a
contract.  It is only necessary that the party electing to
rescind make timely communication of his intention in that
regard, in some manner.  Bringing an action promptly is
generally held sufficient.  (*Marshall* v. *Gilster*, 34 Idaho, 420,
201 Pac. 711; Black on Rescission, sec. 576.)  Although not
essential as a preliminary to an action for rescission the plain-
tiffs gave formal notice of their election to rescind.  In this
notice they stated that the abstract showed that the defendant
did not have a marketable title.  They certainly did not waive
every defect in the title that was not specifically mentioned
in the notice.

The appellant next contends that the plaintiffs are not en-
[9]  titled to rescind for the reason that they did not make
an unconditional tender of the balance due on the purchase
price.  We are not convinced that the objections to the tender
were well taken.  But we will assume for the sake of argu-
ment that the plaintiffs' tender was not sufficient.  When a
vendor is unable to convey the title stipulated for in his con-
tract at the time a conveyance is due, the vendee is not re-
quired to make any tender of the balance of the purchase
price as prerequisite to his right to rescind.  (*Sulthoff* v.
*Maruca*, 57 Wash. 102, 106 Pac. 632.)  This decision is based

upon and is supported by decisions of New York, Minnesota, California and Iowa. A quotation from *Holmes* v. *Holmes,* 12 Barb. (N. Y.) 137, is particularly applicable to the present case: "Unless the law, in regard to contracts for the sale of real property, has come to be a repetition of useless and unmeaning ceremonies, a contracting party who suffers the subject of the contract to be charged with encumbrances of his own creation, or to remain charged with those created by others, in breach of his covenant to assure a good title, as fully and effectually waives and relieves the covenantee from the actual production and offer of the purchase money, as he could do by the use of express words, or by any other means within his power. When he has no title, or his title is defective, at the time when the conveyance is to be made, any condition precedent, such as tendering, paying or securing the purchase money, need not be fulfilled."

The deed tendered by the defendant on January 31 conveyed title subject to all encumbrances of record, in addition to the physical encumbrances agreed to be excepted. The land was not only encumbered at that time by the easement of the Montana Power Company, but by a mortgage given by the defendant itself since the making of the contract. In addition to the title being defective, the form of the deed was not such as was called for by the contract. After the plaintiffs elected to rescind on February 1 the defendant was not entitled to further time either to correct its title or execute a proper conveyance.

Considerable testimony taken at the trial, as well as argument of counsel on the appeal, is devoted to the water right agreed to be conveyed. No useful purpose can be served by discussing the question connected with that issue. When a party seeks to rescind a contract upon several grounds, it is sufficient if he be sustained in one. (Black on Rescission, sec. 780.) Upon the undisputed facts in this case the plain-

tiffs were entitled to rescind the contract, for the reasons heretofore stated.

We recommend that the judgment be affirmed.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment appealed from is affirmed.

*Affirmed.*